IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KACEY BOOTHE, | ) |
|                 Plaintiff, | ) |
| v. | ) Case No. CIV-22-00372-PRW |
| AMERICAN FIDELITY ASSURANCE COMPANY, KEITH JOHNSON, and WAYNE RYAN, | ) |
|                 Defendants. | ) |

## ORDER

Before the Court is Defendants Keith Johnson and Wayne Ryan's Motion to Dismiss (Dkt. 13), Plaintiff Kacey Boothe's Response in Opposition (Dkt. 14), and Defendants Johnson and Ryan's Reply (Dkt. 15). Defendants Johnson and Ryan seek dismissal of Counts VII and VIII of Plaintiff Boothe's Complaint (Dkt. 1), which allege tortious interference with a contractual or employment relationship and tortious interference with prospective business advantage against Defendants Johnson and Ryan. For the reasons that follow, Defendants Johnson and Ryan's Motion (Dkt. 13) is **DENIED**.

### *Background*

This case arises out of an allegedly unlawful termination of employment.[1] Plaintiff Kacey Boothe—a resident of Oklahoma County, Oklahoma—was an employee of

---

[1] At this stage of the proceedings, the Court accepts a plaintiff's well-pleaded allegations as true, so the account presented in this section reflects Ms. Boothe's allegations.

Defendant American Fidelity Assurance Company for nearly thirty years in various positions, most recently as Territory Development Executive for the Central Region. On March 24, 2021, Ms. Boothe was asked by the Central Region Manager—Defendant Wayne Ryan—to join a call with Mr. Ryan and three other high-level American Fidelity employees. During this call, Mr. Ryan informed Ms. Boothe that American Fidelity was terminating her employment. Ms. Boothe believed that this decision was made by Senior Vice-President & Chief Sales Officer—Defendant Keith Johnson—to whom Mr. Ryan and the other American Fidelity employees reported.

At the time, Mr. Ryan informed Ms. Boothe that her employment was being terminated due to racially-insensitive comments Ms. Boothe had allegedly made to coworkers while at an after-hours event at a sports bar on March 8, 2021.[2] However, Ms. Boothe both disputes the nature of those comments and believes that this reason was merely pretext. Ms. Boothe sued American Fidelity, Mr. Johnson, and Mr. Ryan for age discrimination in violation of Age Discrimination in Employment Act, disability discrimination and retaliation in violation of the American with Disabilities Act, retaliation in violation of the Family Medical Leave Act, gender discrimination in violation of the Title VII of the Civil Rights Act of 1964, and violations of Ms. Boothe's rights under the

---

[2] The substance and context of these comments remains debated. Mr. Ryan claimed that he approached Ms. Boothe from behind while at a bar and overheard her using the unabbreviated term of "n----- rigging" while conversing with other employees. Ms. Boothe initially denied the whole event. Later, she claimed that she used the abbreviated form of the term and as an example of vernacular that is no longer acceptable while discussing racial sensitivity.

Employee Retirement Income Security Act. In addition to these federal claims, Ms. Boothe also invoked the Court's supplement jurisdiction to sue Mr. Johnson and Mr. Ryan for tortious interference with a contractual or employment relationship and tortious interference with a prospective business advantage. Mr. Johnson and Mr. Ryan filed the present Rule 12(b)(6) motion to dismiss these latter two state law claims, and the matter is now fully briefed.

### *Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the [non-movant]."[3] A movant's "obligation to provide the grounds of [their] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[4] The pleaded facts must thus be sufficient to establish that the claim is plausible.[5] In considering whether a plausible claim has been made, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[6] However, when considering a Rule 12(b)(6) motion to dismiss, the Court also examines whether the claim fails as a matter of law despite sufficiently detailed factual allegations. Thus, the Court "may grant judgment as a matter of law under Federal

---

[3] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[5] *See id.*

[6] *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense" such as the statute of limitations "when the law compels that result."[7]

### *Analysis*

When exercising its supplemental jurisdiction over state law claims, the Court applies the law of the forum in which it sits, including its choice-of-law provisions.[8] Here, Oklahoma's choice-of-law provisions indicate that Oklahoma substantive law applies to the two tort claims.[9]

Oklahoma recognizes two separate forms of tortious interference: tortious interference with a "current or 'present'" contractual or employment relationship, and tortious interference with a "prospective" economic business advantage.[10] While these two torts are "extremely similar,"[11] they are recognized as "distinct torts"[12] since they have different "underlying theories of liability."[13] "[I]nterference with a contractual relationship

---

[7] *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015).

[8] *BancOklahoma Mort. Corp. v. Cap. Tit. Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999).

[9] Oklahoma uses the "most significant relationship" test to determine governing law in tort cases, and here, that test indicates Oklahoma law should apply. *See Martin v. Gray*, 385 P.3d 64, 67 (Okla. 2016) ("The choice of law applicable to a tort claim is the 'most significant relationship' test . . . ."); *Brickner v. Gooden*, 525 P.2d 632, 635 (Okla. 1974) ("The factors to be taken into account and to be evaluated according to their relative importance with respect to a particular issue, shall include: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred.").

[10] *Lovern v. Church Mut. Ins. Co.*, 452 P.3d 418, 423–24 (Okla. 2019).

[11] *Id.* at 425.

[12] *Id.*

[13] *Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 847 (Okla. 1984).

results in loss of a property right," while "[i]nterference with a prospective economic advantage usually involves interference with some type of reasonable expectation of profit."[14] Since this difference is "more than just a semantical one," the two torts require pleading different elements.[15]

Under Oklahoma law, to state a claim for tortious interference with a contractual or employment relationship, Ms. Boothe must allege sufficient facts for the Court to infer: (1) interference with an existing business or contractual right; (2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and (3) damages proximately sustained as a result of the interference.[16] However, to state a claim for tortious interference with a prospective economic advantage, Ms. Boothe must allege sufficient facts for the Court to infer: (1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted.[17]

For both torts, there is a general rule that "an agent of a principal cannot be held liable for interfering with a contract between the principal and a third party."[18] However,

---

[14] *Id.* at 847–48.

[15] *Id.* at 848.

[16] *See Johnson v. Okla. ex rel. Dep't of Vet. Affairs*, 2021 WL 1063803, at *3 (W.D. Okla. Mar. 19, 2021) (quoting *Tuffy's, Inc. v. City of Okla. City*, 212 P.3 1158, 1165 (Okla. 2009)); *see also Lovern*, 452 P.3d at 426.

[17] *See Lovern*, 452 P.3d at 426.

[18] *Grillot v. Okla. ex rel. Univ. of Okla. Bd. of Regents*, 2019 WL 3558183, at *3 (W.D. Okla. Aug. 5, 2019) (citing *Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998)). Although

there is also an exception to that general rule: "[i]f an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer," the employee may be held liable for tortious interference.[19] The seminal Oklahoma Supreme Court case addressing this rule emphasized both that "the agent must have acted in his own personal interest rather than in the interests (or perceived interest) of his employer"[20] and that a "key factor" is whether the agent was acting outside the scope of their employment to further their own interests.[21] Tying all these pieces together, the exception to the general rule applies "if the agent was acting in bad faith and contrary to the interests of the employer. . . . and in furtherance of the agent's own, personal interests."[22]

Mr. Johnson and Mr. Ryan invoke the general rule to support their motion to dismiss for failure to state a claim, arguing since they were merely executing their duties as employees of American Fidelity, the claims against them individually must be dismissed.

---

this rule does refer to "a contract," federal courts have applied it to both tortious interference with an existing contract and tortious interference with a prospective economic benefit. S*ee McLaughlin v. Bd. of Regents of the Univ. of Okla.*, 566 F. Supp. 3d 1204, 1218 (W.D. Okla. 2021) (applying this rule to a claim of tortious interference with an existing business or contractual right); *Grillot*, 2019 WL 3558183, at *3 (same); *see also Gnapi v. Am. Farmers & Ranchers Mut. Ins. Co.*, 2022 WL 1213131, at *5 (W.D. Okla. Apr. 25, 2022) (applying this rule to a claim of tortious interference with a prospective economic advantage); *Batton v. Marshburn*, 107 F. Supp. 3d 1191, 1198 (W.D. Okla. 2015).

[19] *Grillot*, 2019 WL 3558183, at *3 (quoting *Martin*, 975 P.2d at 896).

[20] *Id.* (summarizing *Martin*, 975 P.2d at 897 n.8).

[21] *Martin*, 975 P.2d at 897 n.8 (citing *Murray v. St. Michael's College*, 667 A.2d 294 (Vt. 1995)).

[22] *Gnapi*, 2022 WL 1213131 at *2 (citing *Grillot*, 2019 WL 3558183, at *4).

For support, they cite *Grillot v. Oklahoma ex rel. University of Oklahoma Board of Regents*[23] and *Melton v. Oklahoma ex rel. University of Oklahoma*,[24] a pair of cases where other courts in this district dismissed tortious interference claims against individual employees of a university after concluding that the respective complaints were devoid of any factual allegations that the individual defendants had acted to further a personal interest.

The Court finds that the present case is distinguishable from either *Grillot* or *Melton*. In her complaint, Ms. Boothe specifically alleged that the actions of Mr. Johnson and Mr. Ryan "were intentional, malicious and wrongful," and that they "were not acting to serve any legitimate or lawful interest of [American Fidelity], but were pursuing their own motives which included hostility toward Plaintiff due to personal disregard for Plaintiff's state and federal protected rights."[25] While such a conclusory assertion, by itself, is insufficient to maintain a claim, Ms. Boothe supplied factual allegations as well. Specifically, Ms. Boothe alleges that the story of racist remarks—which she contests, at least in part—was a mere "pretext" for her termination.[26] She contends that Mr. Johnson and Mr. Ryan concocted this pretextual basis for terminating her employment to cover up

---

[23] 2019 WL 3558183 (W.D. Okla. Aug. 5, 2019).

[24] 532 F. Supp. 3d 1080 (W.D. Okla. 2021).

[25] Compl. (Dkt. 1), at 16, 17.

[26] *Id.* at 5.

their alleged discrimination against her because of her age,[27] disability,[28] and gender.[29] She also alleges that there has been a "pattern of practice of age discrimination," which most heavily impacted employees who were "female" or "suffered medical issues."[30]

These factual allegations demonstrate that this case is more akin to *Gnapi v. American Farms & Ranchers Mutual Insurance Company*[31] and *McLaughlin v. Board of Regents of the University of Oklahoma*[32] than *Grillot* or *Melton*. In *Gnapi*, the plaintiff alleged that he was terminated not for legitimate employment reasons, but due to racial discrimination and hostility by his supervisor.[33] Judge Stephen Friot denied the supervisor's motion to dismiss the tortious interference claims against him after concluding that "[t]he facts pleaded reasonably suggest that [the supervisor's] alleged acts of interference were to further his own personal interests rather than the interests of [the employer]."[34] In *McLaughlin*, the plaintiff claimed that she was forced out of the OU women's basketball team not due to her performance or capabilities, but due to her political

---

[27] *See id.* at 5 (alleging that Mr. Johnson was biased against older employees and had commented that Oklahoma had "too many 'veteran sales reps" and needed to be "fixed").

[28] *See id.* at 5–7 (alleging that Ms. Boothe is a qualified individual with a disability, and that Mr. Johnson had stated work accommodations would not be granted to certain categories of employees, including Ms. Boothe).

[29] *See id.* at 5 (alleging that two male employees assumed Ms. Boothe's job after her termination).

[30] *Id.* at 10.

[31] 2022 WL 1213131 (W.D. Okla. Apr. 2022).

[32] 566 F. Supp. 3d 1204 (W.D. Okla. 2021).

[33] *See Gnapi*, 2022 WL 1213131, at *4–5.

[34] *Id.* at *5.

beliefs and ideological disagreement with her coaches.[35] Judge Joe Heaton denied the coaches' motion to dismiss the tortious interference claims against them after concluding that "the complaint alleges defendants' actions were motivated by their intense personal political views and outlook, rather than being simply concerned with advancing their employer's interests. . . .[which] is sufficient for present purposes to state a claim for interference with contract."[36]

Here, as with *Gnapi* and *McLaughlin*, Ms. Boothe has alleged that Mr. Johnson and Mr. Ryan pursued their own personal racial, agist, and disability-based hostility and discrimination in terminating her, rather than any legitimate interest that may have benefited American Fidelity. At this early stage and when viewing the plausibility of a pleaded claim, the Court bears in mind it must "accept all allegations as true and may not dismiss" simply because "it appears unlikely that the allegations can be proven,"[37] Viewing all factual allegations as true and drawing all reasonable inferences from those allegations in Ms. Boothe's favor, the Court concludes that Ms. Boothe has alleged plausible tortious interference with a contract and tortious interference with prospective economic advantage claims against Mr. Johnson and Mr. Ryan.

### *Conclusion*

Ms. Booth has plausibly alleged claims against Mr. Johnson and Mr. Ryan within the exception to the general rule regarding agents in tortious interference claims such that

---

[35] *See McLaughlin*, 566 F. Supp. 3d. at 1218.

[36] *Id.*

[37] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

9

Mr. Johnson and Mr. Ryan are not entitled to have these claims dismissed at this time. Accordingly, their Motion to Dismiss (Dkt. 13) is **DENIED**.

    **IT IS SO ORDERED** this 13th day of July 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE